# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tykia Dogan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 6:21-3291-RMG |
| v. | ) | |
| | ) | |
| Kilolo Kijakazi, Acting Commissioner | ) | |
| of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") recommending that the decision of the Commissioner be affirmed. (Dkt. No. 12). Plaintiff has filed objections to the R & R and the Commissioner has filed a response. (Dkt. Nos. 15, 16). For reasons set forth below, the decision is reversed and remanded to the agency for further proceedings consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made. The

Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the claimant is engaged in substantial gainful work. If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has a "severe medically determinable physical or mental impairment." If the claimant has one or more severe impairments, the Commissioner proceeds to

-2-

Step Three, which involves a determination whether any impairment satisfies one of the designated list of impairments that would automatically render the claimant disabled.  Where a claimant does not satisfy one of the listed disabling impairments, the Commissioner must proceed to Step Four, which involves a determination of the claimant's RFC.  Once the RFC is determined, the Commissioner proceeds to Step Five to determine if jobs exist in significant numbers in the national economy that the claimant can perform in light of her RFC.  20 C.F.R. § 404.1520(a)(4).  The claimant carries the burden of establishing the requirements of Steps One through Step Four, but at Step Five the burden shifts to the Commissioner.  If the Commissioner fails to carry her burden at Step Five, the claimant is entitled to a finding of disability as a matter of law.  *See Pearson v. Colvin*, 810 F.3d 204, 209-10 (4th Cir. 2015).

Under recently revised regulations, the Commissioner is required to consider five factors in evaluating the weight to be accorded medical opinions.  The two most important factors in weighing medical opinions are supportability, meaning the objective evidence and explanations provided by the medical provider, and consistency, meaning how consistent the medical opinion is with other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c).  Additional factors to consider include the relationship of the provider to the claimant (length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship), specialization of the medical provider, and "other factors" (including familiarity with other evidence in the claim and understanding of disability standards). *Id.*

Although this new regulation eliminates the preference provided to the opinions of treating and examining physicians, the Administrative Law Judge ("ALJ") has the obligation to

consider all medical evidence and "cannot simply cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).   The ALJ also continues to have the obligation to include "a narrative discussion describing how the evidence supports each conclusion" and "'build an accurate and logical bridge from the evidence to his conclusion.'"   *Monroe v. Colvin*, 826 F.3d 176, 189-90 (4th Cir. 2016).   Further, "remand [may] be appropriate" when the courts are "left to guess at how the ALJ arrived at the conclusions" and meaningful review is frustrated.  *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

### Discussion

It is important to note at the outset that the parties do not dispute that Plaintiff has significant medical impairments which markedly limit her capacity to sustain full time employment.   The ALJ found Plaintiff suffers from vestibular migraines and vertigo, which she found to be severe.   Nonetheless, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full scope of sedentary work, the lowest level of performance a claimant can have and not be deemed disabled under the Social Security Act. (Dkt. No. 7-2 at 15, 21).   The Commissioner has recognized that "an RFC for less than the full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare."  SSR 96-9P, 1996 WL 374185, at *1 (July 2, 1996).  On the other hand, Plaintiff asserts that her severe medical impairments render her disabled under the Social Security Act.  In such a case where a claimant, at most, is only marginally able to perform the rigors of full time work,  it is possible that a single piece of evidence not properly considered, weighed or explained by the ALJ, can tip the balance in a

-4-

disability determination.

There is also no dispute that the medical record documents that Plaintiff continues to suffer regularly from migraine headaches, which occur approximately four times per month, and she daily experiences dizziness. (Dkt. No. 7-7 at 275, 438). Plaintiff has been diagnosed and treated by highly skilled specialist physicians, including a board certified neurologist, Dr. Sergiu Besliu, and the director of the Vestibular Program in the Department of Otolaryngology at the Medical University of South Carolina, Dr. Habib Rizk. (Dkt. No. 7-7 at 165, 200, 228-31, 232-34, 259). The medical record shows that while Plaintiff's symptoms have certainly improved with medical treatment, with fewer migraine headaches and "spinning" episodes, she continues to experience regular migraine headaches and daily dizziness, which markedly limit her activities. This includes spending most of her days in her darkened bedroom, to avoid the triggering of migraines from bright light or noise, and the avoidance of driving because of the constant onset of dizziness. (Dkt. No. 7-2 at 58, 60, 62).

Dr. Rizk opines that Plaintiff's condition is unpredictable and "she can experience severe symptoms at any time. These can be triggered by a variety of things such as fluorescent lighting, noise, and exposure to computer monitors without adequate protection." (Dkt. No. 7-7 at 349). He estimated that "she may miss up to ten days of work a month" due to exacerbation of her symptoms. (*Id*.). Dr. Rizk further noted that "[a]lthough improved, she is having daily dizziness." (*Id*. at 438). Dr. Besliu has estimated that Plaintiff will likely experience in the future four migraine headaches a month and "may be unable to perform job duties" when suffering from migraine headaches. (*Id*. at 275). If credited, the opinions of the treating physicians wold likely lead to a finding of disability.

The ALJ's finding that Plaintiff is capable of performing less than the full scope of sedentary work is supported by a single medical review conducted by Dr. Thomas Thomson, based exclusively on a review of the medical chart. Dr. Thomson has not examined or treated Plaintiff and is trained as an emergency room physician. Further, Dr. Thomson's chart review was woefully incomplete. He apparently did not review any of Dr. Rizk's and Besliu's 2020 treatment records or their opinions which indicated that Plaintiff is likely to suffer from frequent absences and an incapacity to work due to her severe impairments.[1] Further, Dr. Thomson's review failed to address how Plaintiff's daily difficulties with dizziness, four times a month migraines, and sensitivity to light impacted her ability to perform full time work 8 hours a day 5 days per week. (Dkt. No. 7-3 at 29-38, 46-50). Despite the glaring incompleteness of Dr. Thomson's chart review, the ALJ found his opinion that Plaintiff was capable of performing sedentary work"persuasive." (Dkt. No. 7-2 at 30).

The ALJ found the opinions of Plaintiff's treating specialized physicians, Drs. Besliu and Rizk, only "partially persuasive" because their opinions "that the claimant could not perform work on a sustained basis is not persuasive, because that proposition is not supported by or consistent with the record as a whole." (*Id*. at 32). The ALJ then focused on specific pieces of the voluminous medical record that indicated Plaintiff's symptoms have improved with treatment

---

[1] Dr. Thomson's review states that "[t]here is no indication that there is a medical opinion from any medical source" and, thus, there was no need for him to address reconciling his opinions with any of the treating physicians. (Dkt. No. 7-3 at 38, 52). Dr. Rizk's opinions regarding Plaintiff's future capacity to sustain work can be found at Dkt. No. 7-7 at 277, 349, 433, 438 and Dr. Besliu's opinions can be found at Dkt. No. 7-7 at 275. Dr. Thomson's report was completed on January 9, 2020 and was not updated or revised upon the Social Security Administration receiving Dr. Rizk's and Dr. Besliu's 2020 treatment records or their opinions on Plaintiff's capacity to perform future work.

but failed to address how her continuing symptoms of four times a month headaches, various "spinning" episodes, daily dizziness, and acute sensitivity to light impacted her present capacity to sustain work.

Based on the foregoing, the Court finds significant deficiencies in the order of the ALJ. Each deficiency set forth below separately and independently supports reversal and remand.

1.    **The ALJ has failed to address how Plaintiff's acute sensitivity to light impacts her capacity to sustain full time work.**

Dr. Rizk documented that Plaintiff's sensitivity to bright lights can trigger the onset of severe symptoms. (Dkt. No. 7-7 at 349). The Vocational Expert acknowledged that most employment settings have bright lighting and sensitivity to bright lighting would adversely impact the availability of employment. (Dkt. No. 7-2 at 72). Plaintiff testified without contradiction that she spends most of her days in her bedroom with only low lighting to avoid triggering her migraine headaches. (*Id*. at 58, 60, 62). While the ALJ makes a passing reference to Dr. Rizk's opinion about Plaintiff's sensitivity to light, he failed to include a low lighting requirement in the RFC or to explain why he did not include such a condition. Based on the Vocational Expert's testimony, the addition of a low lighting requirement in the RFC would likely render Plaintiff disabled. On remand, the ALJ is directed to address the record evidence regarding Plaintiff's sensitivity to light and either add the condition or explain why it has not been included.

2.    **The ALJ fails to build an accurate and logical bridge from the record evidence to the conclusion that the opinions of Plaintiff's treating physicians that she would likely experience frequent absences and be unable to work while suffering from migraines are "unpersuasive."**

The ALJ expends a great deal of effort documenting the improvement of Plaintiff's

symptoms with medical treatment, but fails to explain how her continuing difficulties with four times a month migraines, daily dizziness, and sensitivity to light impact her capacity to sustain full time work.  Plaintiff's treating physicians have plainly stated that her present impairments make it highly improbable she can sustain regular work without frequent absences.  The ALJ rejects these opinions with simple boilerplate language that "their indication that the claimant could not perform work on a sustained basis is not persuasive, because that proposition is not supported with the record as a whole."  (Dkt. No. 7-2 at 32).  Documenting Plaintiff's past improvement in symptoms does not address the present ability of Plaintiff to perform sustained work.  On remand, the ALJ must build a logical bridge from the record to establish that the opinions of Plaintiff's treating physicians on her ability to sustain full time work are not supported by and consistent with the record.

3.     **The ALJ's reliance on the woefully incomplete opinion of the report of Dr. Thomson is inconsistent with the requirements of § 404.1520c.**

The newly adopted regulations require the ALJ to evaluate all opinions, including those of chart reviewers, on the five factors set forth in § 404.1520c, with a special emphasis on supportability and consistency.  Dr. Thomson's chart review is the sole opinion in the record that supports a finding that Plaintiff can sustain sedentary work.  This opinion, however, fails to consider the 2020 treatment records of Drs. Besliu and Rizk or their opinions about Plaintiff's capacity to work.  In fact, the ALJ makes no effort to apply the standards of § 404.1520c to the opinions of Dr. Thomson report.  On remand, the opinions of all physicians should be measured by the same standard and the ALJ may not simply provide a conclusory statement that the opinions of the chart reviewer are "persuasive."

The Court notes that the ALJ did not address the factors under § 404.1520c beyond

-8-

consistency and supportability. Many of the other factors under the regulation, including the treating and examining relationship of Drs. Rizk and Besliu with Plaintiff and their high level of specialized training, appear to heavily favor the opinions of the treating physicians and disfavor the opinions of the chart reviewer. The difficulty this Court has in reviewing the ALJ's opinion under the substantial evidence standard is that it is impossible to tell whether the ALJ actually weighed these other factors in evaluating the medical opinions in this record. If the record was simply one sided and clear, an explanation of consideration of the other factors under § 404.1520c would not be necessary. However, where, as here, there is significant record evidence supporting Plaintiff's claim of disability and the regulation requires the ALJ to consider all of the factors under 404.1520c(c), the Court cannot confirm that this was actually done without the ALJ confirming he considered all five factors set forth in § 404.1520c and explaining how he weighed those factors. Otherwise, substantial evidence review cannot, as a practical matter, be conducted.

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed pursuant to Sentence Four of 42 U.S.C. § 405(g) and the matter is remanded to the agency for further proceedings consistent with this order.

**AND IT IS SO ORDERED**.

<u>S/ Richard Mark Gergel</u>
Richard Mark Gergel
United States District Judge

September 7, 2022
Charleston, South Carolina

-9-